In re Gerald E. BROWN & Judy L. Brown, Debtors.

**STATE BANK OF SLATER, Plaintiff,**

v.

**Gerald E. BROWN, et al., Defendants.**

Bankruptcy No. 90–41774–2–11.

Adv. No. 90–4130–2–11.

United States Bankruptcy Court, W.D. Missouri.

Dec. 4, 1990.

---

Robert M. Thompson, Laurence M. Frazen, Kansas City, Mo., for plaintiff.

Janice E. Stanton, Shughart, Thomson & Kilroy, Kansas City, Mo., for debtors.

Charles E. Fowler, III, McDowell, Rice & Smith, Kansas City, Kan., for Wood & Huston Bank.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Gerald E. Brown and Judy L. Brown filed their petition for relief under Chapter 11 on July 10, 1990. Debtors and the State Bank of Slater deny that Wood and Huston Bank have a claim secured by the proceeds of the Estate of Francis Lester Brown (father of Gerald E. Brown). For ease of discussion, Gerald and Judy Brown will be denominated as debtors; the State Bank of Slater as SBS; and Wood and Huston Bank as WHB. Where only Gerald E. Brown is intended to be named, the term debtor will be used.

Debtor and his brother, Wayne Brown, had farmed together since 1963. Their farming operation was known as Brown Brothers and partnership tax returns had been filed regularly for Brown Brothers. Brown Brothers had executed a number of notes, deeds of trust, security agreements, financing statements, and all sorts of financial documents with WHB. Brown Brothers at one time owed WHB over one million dollars in varied types of loans. By late 1987 or early 1988 the debt to WHB had been reduced to some $235,000.00 secured by farm equipment worth considerably less than the balance due. Brown Bros. also had one other loan secured by real estate. WHB had guarantees from debtors and from Wayne Brown and his wife of all Brown Brothers debts. On or about May 5, 1988, debtors went into WHB with Wayne and his wife and executed a new note and a new security agreement of even date. It is this security agreement that presents the major question. There are a number of inconsistencies or ambiguities contained in that document.

Initially the blank provided for the names of the borrower was filled in with the words "Brown Bros., Wayne F. Brown, Rose M. Brown, Gerald E. Brown and Judy L. Brown". The collateral was indicated by checking boxes designated for "Inventory", "Equipment, Farm Products And Consumer Goods" with the notation "see Exhibit A attached hereto", "Accounts And Other Rights To Payment", and "General Intangibles". In the next section where the debtor was identified as to composition, the box was checked indicating that debtor was a "partnership". In that same subsection the box was checked that "the collateral will be used primarily for farming operations". The signature block was typed as follows:

t/Brown Bros.
(Debtor's Name)
By: s/Wayne F. Brown
Title: t/Wayne F. Brown
By: s/Rose M. Brown
Title: t/Rose M. Brown
s/Gerald E. Brown
t/Gerald E. Brown
s/Judy L. Brown
t/Judy L. Brown

Exhibit A attached to the security agreement listed 73 different items of equipment, ranging from one item listed as "15 buildings" down to one item listed as a "rear blade". The Exhibit is also dated May 5, 1988. It is signed the same way as the Security Agreement except that the words "By" and "Title" are not printed before the signatures. Also attached to the security agreement is the Missouri Certificate of Title to a 1985 Ford Pickup titled in the name of Brown Bros.

During the travails of Brown Bros., the father of debtor and of Wayne Brown had died, Wayne Brown was appointed the personal representative, and the estate was administered. Debtor and Wayne were two of five children who were equal heirs of Francis Lester Brown. It being decided finally to dispose of the home place (and a substantial asset in Francis L. Brown's estate) by sale at auction, debtor and Wayne wished to buy the home place and divide it between them. Of course, they would have to borrow money to pay cash at the auction.

Debtor and Wayne, in late 1988, went to WHB to discuss financing them in their attempt to buy the home place. There is wide divergence as to who said what to whom but some things are uncontested. Debtor and Wayne wanted WHB to advance the full bid at auction and then when each of them received his share of the estate, each would immediately pay therefrom 20% of the amount advanced back to the Bank and finance the 80% balance over ten years. The Bank pondered the loan and then declined it. The Bank said nothing to either man about it already having a lien on any distribution that they were to receive from their father's estate. Likewise WHB never said anything to debtor or to Wayne Brown in the spring of 1990 when each of them received a distribution of $29,000.00 from the estate.

Debtor and Wayne went to the State Bank of Slater and proposed the same borrowing transaction to that Bank. William Summers, Vice President of SBS, discussed the loan with them. Later he called John Muller, President of WHB, and discussed the potential loan with him. Again there is some divergence as to what was said, but both parties do agree that WHB never claimed a security interest in or to the potential estate distribution. SBS subsequently agreed to make the loans to debtor and Wayne, actually advanced the money for the auction purchase, and filed an "Assignment of Interest In Personalty In Decedent's Estate" in the Probate Division of Saline County, Missouri where the Estate of Francis Lester Brown was pending. Up to that time, WHB had never asserted any overt claim to distributions from the estate but some six weeks later, WHB filed a "Notice of Security Interest In Accounts And Other Rights To Payment And General Intangibles" with the Probate Division.

■ The issue then that debtors must know to file a Reorganization Plan is whether WHB's claim is secured by the estate distributions, or only by the Brown Bros. property. Debtors guaranteed or co-signed all of the Brown Bros. loans so WHB is an unsecured creditor at the minimum. Although WHB claims a secured position as to these distributions under Accounts And Other Rights To Payment as well as under "General Intangibles", only the claim under "General Intangibles" is viable. R.S.Mo. 400.9–106 defines "Account" as any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper. It also defines "contract right" as any right to payment under a contract not yet earned by performance and not evidenced by an instrument of chattel paper. Clearly these estate distributions fall into neither category.

■ The issue then comes down to whether the security agreement with the

block checked for "General Intangibles" creates a security interest in the estate distributions.[1] The Court believes that it does not. There are two separate and distinct reasons for this ruling. First, the Court finds that WHB and the signatories on the security agreement intended to create a security interest in all of the assets of Brown Bros., a partnership, did not intend to take a security interest in the separate property of Wayne F. Brown, Rose M. Brown, Gerald E. Brown and Judy L. Brown, and took precisely and only the intended security interest. This is evidenced in several ways. One, the Bank prepared the document and said that its borrower was a partnership. Two, the Bank listed every known item of property of Brown Bros. with meticulous detail. The certificate of title to the only licensed motor vehicle owned by Brown Bros. was attached to the security agreement. However, the property of the individuals who signed the agreement, was not described. John Muller stated at trial that WHB was not claiming the consumer goods of those four individuals. The motor vehicles of the individual debtors were not listed nor the titles attached.

Second, the Bank did not act like a secured creditor. When debtor and Wayne got the first distribution from their father's estate, the Bank made no claim on it, directed to either the probate court or to the two brothers. When William Summers of SBS called John Muller of WHB and discussed the financing of debtor and Wayne Brown in the purchase of the home place, Mr. Muller never indicated WHB had any claim on the estate distribution, nor did Mr. Muller in any conversation ever claim such a security interest. In fact, it was not until June 27, 1990, that counsel for WHB sent the notice to Wayne Brown and to the Probate Court of Saline County of the purported security interest. That was some six weeks after the auction sale and some five weeks after SBS had served its first notice of the Assignment.[2] The Court believes that WHB intended to take a security interest in all of the past, present and future assets of Brown Bros., but not the four individuals. The Court believes that when it prepared the security agreement and denominated the borrower as a partnership it carried out that intent and bound itself by any ambiguities or inconsistencies it created. The subsequent conduct of the Bank (from May 5, 1988 until June 27, 1990) is totally consistent with such an interpretation and totally inconsistent with the Bank's posture as now expressed. In view of the foregoing, the claim of WHB is ruled to be secured by the assets of Brown Bros. only and not the assets of Gerald E. Brown and Judy L. Brown, including but not limited to the distributions from the Estate of Francis Lester Brown.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.

1. There is some question in the Court's mind as to the effectiveness of a security agreement, or even an assignment in view of the Missouri Statutes. The only provision the Court is aware of which might allow some party other than an actual distributee to participate in the estate distribution is R.S.Mo. 473.618. That section allows a judgment creditor of a distributee to file a duly acknowledged request for notice of any distribution. If properly done, said request entitles the judgment creditor to 20 days advance notice of any distribution so that the judgment creditor may issue an execution and a garnishment in aid thereof.

In view of this, the Court availed itself of the courtesy and kindness of the Honorable John A. Borron Jr., Judge of the Probate Division of the Sixteenth Judicial Circuit of Missouri and a widely acknowledged expert on the Probate Code. Judge Borron indicated that without the concurrence of the distributee, he had serious doubts whether a contractually secured creditor could receive a distribution from the Probate Division of the Sixteenth Judicial Circuit.

2. The Court does not consider the issue of whether WHB is estopped to claim a secured position vis-a-vis SBS since it is not necessary to do so in order to rule the paramount issue.